UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TIARA HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-cv-01084-SRC |
| | ) | |
| SAFECO INSURANCE COMPANY | ) | |
| OF ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum and Order**

A careless motorist rear-ended Tiara Harris as she traversed the streets of St. Louis in her Cadillac. Seeking compensation for her personal injuries, Harris turned to her own automobile-insurance company, Safeco Insurance Company of Illinois, because the careless motorist that hit Harris lacked sufficient insurance coverage to make Harris whole. Safeco refused to pay the difference, so Harris sued Safeco. Now, Safeco moves to dismiss, arguing that Harris failed to plead that she upheld her own end of the bargain in the insurance agreement. Because Harris adequately pleaded that she satisfied her obligations under the insurance contract, the Court denies Safeco's Motion to Dismiss.

I.    **Background**

A.    **Factual background**

The Court accepts the following well-pleaded facts as true for the purposes of this motion to dismiss. On February 22, 2023, Harris drove her Cadillac CTS down Natural Bridge Road in St. Louis. Doc. 1 at ¶¶ 7–8. Patrick Cunningham trailed Harris closely in his own car. *Id.* at ¶¶ 9–10. As Cunningham approached Harris, he carelessly failed to slow down and, as a result, rear-ended Harris's vehicle. *Id.* at ¶¶ 9–11. From the accident, Harris sustained injuries to her

neck, back, and right knee.  *Id.* at ¶ 12.  She underwent, and continues to undergo, medical treatment for her injuries.  *Id.*

At the time of the accident, Harris had an automobile-insurance policy with Safeco.  *Id.* at ¶ 15.  The policy required Safeco to pay compensatory damages for personal injury that Harris could legally "recover from the owner or operator of an underinsured motor vehicle."  *Id.* at ¶ 18 (emphasis omitted).  The policy defined "underinsured motor vehicle" as a vehicle "to which a bodily injury liability bond or policy applie[d] at the time of the accident" but which lacked enough coverage "to pay the full amount" of a valid claim.  *Id.* at ¶ 19 (emphasis omitted).  Cunningham's automobile-insurance policy provided only the state-minimum $25,000-per-person bodily-injury-liability coverage.  *Id.* at ¶ 21.  Harris recovered from Cunningham everything up to this limit, *id.* at ¶ 22, but, under the automobile-insurance policy, she claims that she can recover more.  *Id.* at ¶¶ 20–25.

Harris sent to Safeco, on October 12, 2023, a demand package that included "all of [her] relevant medical record[s] and billing information related [to] the injuries she sustained" from the accident.  *Id.* at ¶ 29.  She asked Safeco for $123,221.34.  *Id.* at ¶ 30.  Eleven days later, Safeco told Harris that it could not complete her evaluation until Harris provided a "recorded statement."  *Id.* at ¶ 31.  The next week, Harris provided one.  *Id.* at ¶ 32.  In early December, Safeco got back to Harris with an offer:  Safeco would settle Harris's underinsured-motorist claim for $2,500.  *Id.* at ¶¶ 35–36.  Safeco failed to explain the more-than-$100,000 disparity between Harris's demand and the offer.  *Id.* at ¶ 37.

Harris "performed all of the conditions precedent under the terms of" the policy.  *Id.* at ¶¶ 28, 71.  In her demand package, she submitted all "relevant medical records and bills" for her treatment.  *Id.* at ¶ 45. And when Safeco requested "executed authorizations" from Harris, Harris

provided "HIPAA[-]compliant authorizations for all relevant medical providers" the next day. *Id.* at ¶¶ 38–39.  Months later, Safeco requested another authorization from Harris.  *Id.* at ¶ 47. Again, Harris provided it.  *Id.* at ¶ 47.  Still later, Safeco wrote to Harris's counsel that its attorney would conduct an examination under oath on April 9, 2024.  *Id.* at ¶ 52.  Safeco's attorney conducted the examination over Zoom on April 24, 2024.  *Id.* at ¶ 56.  At the examination, Safeco's attorney "had the ability to ask any question she deemed relevant and/or necessary to . . . Safeco's evaluation of [Harris's] underinsured-motorist claim."  *Id.* at ¶ 58. This included the ability to ask all relevant "non-privileged questions."  *Id.* at ¶¶ 59–60.

    **B.    Procedural history**

    After Safeco continued to refuse to raise its settlement offer, Harris sued Safeco for breach of contract and vexatious refusal.  Doc. 1 at 3, 12.[1]  Safeco timely moved to dismiss for failure to state a claim upon which relief can be granted.  Doc. 14 at 1.  Safeco argues that Harris's complaint "fails to clearly allege facts showing that she complied with the conditions precedent under the insurance policy."  *Id.*  In the alternative, Safeco asks the Court to require Harris to provide a more definite statement under Federal Rule of Civil Procedure 12(e).  *Id.* at 9.

## II.    Standard

    **A.    Dismissal for failure to state a claim**

    Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as

---

[1] The Court cites to page numbers as assigned by CM/ECF.

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  The Court must grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).  Ordinarily, the Court considers only the facts alleged in the complaint when ruling on a motion to dismiss; however, the Court may consider materials attached to the complaint in construing the complaint's sufficiency.  *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).  However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *See Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (citing *Twombly*, 550 U.S. at 562).  Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.  "A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817–18 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Although courts must accept all factual

allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679. Therefore, the Court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id*. This "context-specific task" requires the Court to "draw on its judicial experience and common sense." *Id*. The well-pleaded facts must permit more than the "mere possibility of misconduct." *Id.* at 679. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

**B.    Motion for a more definite statement**

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." To prevail, the party seeking a more definite statement must "point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). Unintelligibility provides grounds for a Rule 12(e) motion, but mere "lack of detail" does not. *Tinder v. Lewis Cnty. Nursing Home Dist.*, 207 F. Supp. 2d 951, 960 (E.D. Mo. 2001) (citing *Cox v. Me. Maritime Acad.*, 122 F.R.D. 115, 116 (D. Me. 1988)).

**III.    Discussion**

The parties appear to agree that Missouri law applies to both the breach-of-contract claim and the vexatious-refusal claim. *See* docs. 14, 15. To state a breach-of-contract claim, a plaintiff must plead facts that satisfy the following elements: "(1) the existence and terms of a contract; (2) that [the] plaintiff performed or tendered performance pursuant to the contract; (3) breach of

the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. 2010) (citation omitted); *see also Delker*, 21 F.4th 1019 at 1024 (citing *Twombly*, 550 U.S. at 562).  To state a vexatious-refusal claim, a plaintiff must plead facts that satisfy the following elements:  (1) the existence of an insurance policy between the plaintiff and the defendant; (2) the defendant's refusal to pay; and (3) that the defendant refused to pay "without reasonable cause or excuse."  *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 457 (Mo. 2006); *see also Delker*, 21 F.4th at 1024 (citing *Twombly*, 550 U.S. at 562).

Safeco argues that Harris's complaint fails to clear the bar because Harris failed to allege that she satisfied her obligations under the insurance contract.  *See* doc. 14.  Such a failure would provide grounds for dismissal of both claims.  After all, Harris would not be able to state a breach-of-contract claim without alleging that she "performed or tendered performance pursuant to the contract," *Keveney*, 304 S.W.3d at 104, and she would not be able to state a vexatious-refusal claim without alleging that Safeco refused to pay her "without reasonable cause or excuse," *Dhyne*, 188 S.W.3d at 457.  Both of these elements require that Harris upheld her end of the bargain.

Harris counters that she adequately alleged her compliance with the policy's conditions precedent.  *See* doc. 15.  The Court agrees with Harris.  With a general allegation, Harris adequately pleads that she performed all conditions precedent.  And with her specific allegations of performance, the complaint corroborates, rather than contradicts, her general allegation.

### A.      With a general allegation, Harris adequately alleges that she performed all conditions precedent

"In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."  Fed. R. Civ. P. 9(c).  Here, the complaint alleges that Harris "performed all of the conditions precedent under the terms of [the]

6

automobile[-]insurance policy."  Doc. 1 at ¶ 28; *see also id.* at ¶ 71.  This allegation satisfies Federal Rule 9's pleading standard.

Safeco concedes this.  *See* doc. 14 at ¶ 7.  But, Safeco contends, specific allegations contradict the general assertion, leaving Safeco in the dark about whether Harris performed.  *Id.* at ¶¶ 6–8.  Specifically, Safeco contends that Harris's complaint falls short in three ways.  First, Safeco says that Harris didn't provide "HIPAA-compliant medical authorizations" until months after Harris made her demand.  *Id.* at ¶ 7.  Second, Safeco argues that Harris failed to allege that she submitted to an examination under oath.  *Id.* at ¶ 5.  Third, tacitly admitting that Harris *did* submit to an examination under oath, Safeco argues that Harris admitted to violating Safeco's right to examine under oath by asserting privilege at the examination under oath.  *Id.* at ¶ 11.  The Court turns to each argument.

### B.    Harris's allegations regarding the production of medical authorizations corroborate her general allegation of performance

The complaint states that Harris sent Safeco her demand on October 12, 2023, doc. 1 at ¶ 29, Safeco demanded medical authorizations from Harris on December 11, 2023, *id.* at ¶ 38, and Harris tendered her HIPAA-compliant authorizations to Safeco the next day, *id.* at ¶ 39.  Safeco contends that the policy required Harris to promptly respond to Safeco's demand "for HIPAA-compliant medical authorizations," and that the complaint demonstrates that she failed to.  Doc. 14 at 8.  It doesn't.

Even if the Court assumes that the policy required Harris to promptly respond to Safeco's requests, Safeco ignores a key fact:  only *one day* passed between Safeco's demand for the medical authorizations and Harris's production of them.  *See* doc. 1 at ¶¶ 38–39.  Assuming the veracity of this allegation (as the Court must at this stage), the Court finds no doubt that Harris

produced the authorizations promptly.  Thus, the Court declines to dismiss Harris's complaint on this basis.

### C.  Harris's allegations regarding the examination under oath corroborate her general allegation of performance

Safeco contends that Harris's complaint "does not aver she actually submitted to an [examination under oath]," which was a "condition precedent" under the policy.  Doc. 14 at ¶ 8. Safeco's contention betrays, at best, extreme carelessness.  The Court accordingly rejects it.

Again, the law does not require Harris to allege that she submitted to an examination under oath beyond a general statement that she complied with "all conditions precedent."  Fed. R. Civ. P. 9(c).  And again, the complaint makes such a general statement.  *See* doc. 1 at ¶¶ 28, 71.  But even if the applicable rules required more specificity, the complaint provides it.

The complaint explicitly states that Harris "submitted to Defendant Safeco an 'examination under oath' taken by attorney Amy Simkins via Zoom on April 24, 2024."  *Id.* at ¶ 56.  The complaint goes on to describe how Safeco's attorney "had the ability to ask any question she deemed relevant and/or necessary" to the claim, *id.* at ¶ 58, and that Safeco's attorney "asked all of the non-privileged questions she deemed relevant and/or necessary" to the claim, *id.* at ¶ 60.  The complaint could not have alleged more clearly that Harris submitted to an examination under oath.  Safeco's contention that "[Safeco] and this Court are left to guess or surmise" about whether the complaint makes such an allegation, doc. 14 at 8–9, leaves this Court guessing and surmising about whether Safeco's counsel even read the complaint that Safeco asks this Court to dismiss.  In any case, the Court rejects Safeco's argument.

### D.    Harris's allegations regarding privilege corroborate her general allegation of performance

Seemingly contradicting its prior argument that Harris failed to submit to an examination under oath, Safeco argues that Harris denied Safeco its right to examine under oath by asserting privilege at the examination under oath. Doc. 14 at ¶¶ 10–11. Safeco claims that, in her complaint, Harris "tacitly admits to asserting privilege during the [examination under oath], which is, as a matter of Missouri law, fatal to her claim." *Id.* at ¶ 10. Like many of its other arguments, Safeco's argument lacks a basis in law or fact.

Regarding the law, Safeco provides no support for its contention that "asserting privilege" during an examination under oath dooms a breach-of-contract or vexatious-refusal claim. Safeco cites to three cases. *Id.* at 7. Not a single one even mentions privilege. *See generally McClune v. Farmers Ins. Co., Inc.*, 12 F.4th 845 (8th Cir. 2021); *State Farm Fire & Cas. Co. v. Rogers*, No. 6:19-cv-03336-SRB, 2020 WL 877815 (W.D. Mo. Feb. 21, 2020); *Goodman v. Allstate Fire & Cas. Ins. Co.*, No. 22-00383-cv-W-GAF, 2023 WL 5667909 (W.D. Mo. Jul. 26, 2023). *McClune* dealt with a completely different issue: whether the insurance-company defendant waived its right to an examination under oath when it stated that it had completed its investigation. *McClune*, 12 F.4th at 850. And the other two cases—both federal-district-court cases from other districts—establish, at most, that an insurance company may disclaim coverage if the insured *refuses* to submit to an examination under oath. *See Rogers*, 2020 WL 877815, at *4 (holding that the insurance company suffered "substantial prejudice" when the insured "refus[ed] to submit to examinations and supply the requested documents"); *Goodman*, 2023 WL 5667909, at *8 ("Plaintiff correctly notes that questions of prejudice often arise when an insured refuses to give testimony under oath."). Here, Harris

alleges exactly the opposite. *See* doc. 1 at ¶ 56 (alleging that Harris "submitted to . . . Safeco an 'examination under oath'").

Regarding the facts, even if Safeco could establish a legal basis for its argument that asserting privilege spells death for Harris's claims, the complaint doesn't allege that Harris asserted privilege at the examination under oath. The most it says is that Safeco's attorney "asked all of the non-privileged questions she deemed relevant." Doc. 1 at ¶ 60. That doesn't mean that Harris asserted privilege. It doesn't even mean that Safeco's attorney *didn't* ask any privileged questions—or that Harris didn't answer them—only that Safeco's attorney *did* ask non-privileged questions. Either way, Harris's allegation that she "performed all of the conditions precedent under the [policy]," doc. 1 at ¶¶ 28, 71, satisfies the pleading standard on its own, *see* Fed. R. Civ. P. 9(c). Thus, the Court denies Safeco's Motion to Dismiss.

**E.    Safeco can reasonably prepare a response to the complaint.**

Safeco alternatively moves for a more definite statement under Federal Rule of Civil Procedure 12(e). *See* doc. 14 at 9. But as shown above, the complaint suffices to notify Safeco of Harris's allegations that she performed all conditions precedent under the policy. Safeco can "reasonably prepare a response" to the complaint as it currently stands, by either admitting to or denying Harris's repeated allegations of performance. Fed. R. Civ. P. 12(e). Thus, the Court denies Safeco's alternative motion for a more definite statement.

**IV.    Notice to Safeco**

Having denied Safeco's motion, the Court finds that it lacks any basis in fact or law and is borderline if not entirely frivolous. The Court reminds Safeco and its counsel of their obligations under Federal Rule of Civil Procedure 11, and the Court further orders Safeco to fully comply with those obligations in all future filings in this case.

**V.      Conclusion**

Accordingly, the Court denies Safeco's [14] Motion to Dismiss and alternative motion

for a more definite statement.

So ordered this 10th day of April 2025.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE